# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

_____

|  |  |
|---|---|
| JOHN R. KIELTY,<br><br>    Plaintiff,<br><br>  vs.<br><br>FEDERAL HOME LOAN MORTGAGE<br>CORP. et al.,<br><br>    Defendants. | 2:15-cv-00230-RCJ-GWF<br><br>**ORDER** |

_____

This case arises out of a condominium unit owners' association foreclosure sale and the attempts of the purported holders of a first deed of trust to foreclose against the same unit thereafter. Pending before the Court are three Motions for Summary Judgment (ECF Nos. 38, 46, 53) and a Motion to Stay (ECF No. 48).

## I. FACTS AND PROCEDURAL HISTORY

On or about January 3, 2004, Defendant Joel B. Edralin purchased real property at 2181 Hussium St., Unit 108, Las Vegas, Nevada, 89108 (the "Property") via a $145,400 loan (the "Loan") from non-party Charter Funding ("Charter"), giving a deed of trust (the "DOT") against the Property as security, which was recorded on or about January 6, 2005. (*See* Compl. ¶¶ 2, 6, 13–14, ECF No. 1, at 10). A declaration of covenants, conditions, and restrictions (the "CC&R") had been recorded as to the Property by Counterdefendant Rancho Lake Condominiums Unit-

Owners Association (the "CUOA") on or about August 5, 2004. (*Id.* ¶¶ 9–10). Edralin failed to pay unit assessments under the CC&R, and the CUOA recorded a notice of assessment lien on December 20, 2011, a notice of default and election to sell on February 13, 2012, and a notice of foreclosure sale on May 20, 2013, selling the Property to Plaintiff John R. Kielty at auction on June 14, 2013 for an amount not specified in the Complaint. (*See id.* ¶¶ 18–24).

In the meantime, Edralin had also defaulted on the Loan on or about May 1, 2011. (*Id.* ¶ 33). On or about December 2, 2011, non-party Mortgage Electronic Registration Systems, Inc. ("MERS") recorded an assignment of its interest in the DOT to non-party Bank of America, N.A. ("BOA"). (*Id.* ¶ 34). Another assignment was recorded on March 20, 2013, transferring BOA's interest to Defendant Nationstar Mortgage LLC ("Nationstar"). (*Id.* ¶ 35). On or about July 26, 2014 (after the CUOA sale), another assignment was recorded transferring Nationstar's interest to Defendant Federal Home Loan Mortgage Corp. ("Freddie Mac"). (*Id.* ¶ 37). On or about July 31, 2014, Defendant American Trustee Servicing Solutions, LLC ("ATSS") recorded a notice of default against the Property based on Edralin's default on the Loan, purporting to act on behalf of Nationstar, although Nationstar had transfered its interest to Freddie Mac. (*Id.* ¶¶ 40–41).

Plaintiff sued Freddie Mac, Nationstar, ATSS, and Edralin in state court to quiet title to the Property in Plaintiff's favor and enjoin any foreclosure based on the DOT, which Plaintiff argues was extinguished by the CUOA sale. Freddie Mac removed. Freddie Mac and Nationstar jointly answered and pleaded counterclaims for quiet title against Kielty, wrongful foreclosure against the CUOA, and declaratory and injunctive relief. Kielty answered the Counterclaim. The Court granted the Federal Housing Finance Agency's ("FHFA") motion to intervene as a Defendant. The CUOA answered the Counterclaim. Neither ATSS nor Edralin have appeared. Kielty has moved for offensive summary judgment on his claims, Freddie Mac and Nationstar

1   have moved for offensive summary judgment on their counterclaims, and the CUOA has moved

2   for defensive summary judgment against those counterclaims.

3   **II.     LEGAL STANDARDS**

4          A court must grant summary judgment when "the movant shows that there is no genuine

5   dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

6   Civ. P. 56(a).  Material facts are those which may affect the outcome of the case. *See Anderson*

7   *v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if

8   there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See*

9   *id.*  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported

10  claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

11         In determining summary judgment, a court uses a burden-shifting scheme.  The moving

12  party must first satisfy its initial burden.  "When the party moving for summary judgment would

13  bear the burden of proof at trial, it must come forward with evidence which would entitle it to a

14  directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v.*

15  *Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citation and internal quotation marks

16  omitted).  In contrast, when the nonmoving party bears the burden of proving the claim or

17  defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate

18  an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving

19  party failed to make a showing sufficient to establish an element essential to that party's case on

20  which that party will bear the burden of proof at trial.  *See Celotex Corp.*, 477 U.S. at 323–24.

21         If the moving party fails to meet its initial burden, summary judgment must be denied and

22  the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*,

23  398 U.S. 144 (1970).  If the moving party meets its initial burden, the burden then shifts to the

opposing party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations unsupported by facts. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

At the summary judgment stage, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50. Notably, facts are only viewed in the light most favorable to the non-moving party where there is a genuine dispute about those facts. *Scott v. Harris*, 550 U.S. 372, 380 (2007). That is, even where the underlying claim contains a reasonableness test, where a party's evidence is so clearly contradicted by the record as a whole that no reasonable jury could believe it, "a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

///

///

1     **III.     ANALYSIS**

2          **A.     Federal Preemption**

3          This Court and others in the District have ruled that 12 U.S.C. § 4617(j)(3) prevents the

4     sale of any property in which the FHFA (as conservator of Fannie Mae or Freddie Mac) has an

5     interest without the FHFA's consent. *See My Global Vill., LLC v. Fed. Nat'l Mortg. Ass'n*, No.

6     2:15-cv-00211, 2015 WL 4523501, at *4 (D. Nev. July 27, 2015) (Jones, J.) (citing *Skylights*

7     *LLC v. Byron*, ⸺ F. Supp. 3d ⸺, 2015 WL 3887061 (D. Nev. 2015) (Navarro, C.J.)).  The

8     *Skylights* case has been cited multiple times by other judges of this District and only in approval.

9     The Court considers this point of law settled unless and until the Court of Appeals rules

10    otherwise.

11         The issue dispositive of much of this case is whether Freddie Mac held an interest in the

12    Property at the time of the CUOA sale, which the parties dispute.  The parties do not appear to

13    dispute that the CUOA sale occurred on June 14, 2013.  Freddie Mac argues that it purchased the

14    Loan on February 7, 2005.  In support, it provides the affidavit of Dean Meyer, its Director of

15    Loss Mitigation, who attests that Freddie Mac's records show that it acquired ownership of the

16    Loan on or about February 7, 2005 and has owned it ever since. (*See* Meyer Aff. ¶¶ 2, 5.d, ECF

17    No. 46-1).  Meyer appears to explain away the contrary assignments recounted in the Complaint

18    (and the Counterclaim) by noting that those were assignments of the DOT and/or the servicing

19    rights, not the beneficial interest in the Loan itself, which Freddie Mac retained. (*See id.* ¶ 5.f–

20    5.h).

21         Plaintiff's evidence, however, creates a genuine issue of material fact as to whether

22    Freddie Mac owned the beneficial interest in the Loan at the time of the CUOA sale.  The DOT

23    notes that the lender was Charter, and that MERS was both the lender's nominee and the

24

beneficiary of the DOT. (*See* DOT 1–3, Jan. 3, 2005, ECF No. 38-3).  The first assignment is an assignment by MERS of the DOT "together with the Promissory Note secured" to BOA. (Assignment, Sept. 21, 2011, ECF No. 38-4).  MERS had the ability to transfer both its own interest in the DOT and Charter's interest in the Loan, and the transfer to a single entity (BOA) cured any split between those interests. *See Edelstein v. Bank of N.Y. Mellon*, 286 P.3d 249, 259–60 (Nev. 2012).  The next assignment from BOA to Nationstar also transferred both the Loan and the DOT. (Assignment, Feb. 27, 2013, ECF No. 38-5).  Even if the assignment had not explicitly transferred both, after the contractual split had been cured, one followed the other as a matter of law absent any contractual language providing otherwise. *See Edelstein*, 286 P.3d at 258 (citing Restatement (Third) of Prop.: Mortgages § 5.4(a)–(b) (1997)).  The next assignment from Nationstar to Freddie Mac (after the CUOA sale) appears to have only transferred the DOT, (*see* Assignment, July 18, 2014, ECF No. 38-11), but the Loan presumably followed as a matter of law, *see Edelstein*, 286 P.3d at 258 (citing Restatement (Third) of Prop.: Mortgages § 5.4(a)–(b) (1997)).

Not only has Plaintiff shown a genuine issue of material fact as to whether Freddie Mac had any interest in the Property at the time of the CUOA sale in this case, his own evidence eliminates any question of fact, and Freddie Mac has adduced only a single, self-interested affidavit to the contrary that is so contradicted by the record as a whole that a reasonable jury could not believe it. *See Scott*, 550 U.S. at 380.  Freddie Mac produces no underlying documents—none— tending to show its interest in the Property to counter the clear chain of documents provided by Plaintiff showing that Freddie Mac obtained no interest in the Property until after the CUOA sale.  Freddie Mac offers only a declaration by its own employee stating his belief that Freddie Mac owned the Loan at the relevant time based on entries in Freddie Mac's

own computer database.  But even this employee does not claim that Freddie Mac owned the

DOT at the relevant time, which means that by Freddie Mac's own evidence, it had no interest in

the Property itself at the time of the CUOA sale.  He admits Freddie Mac did not receive any

interest in the DOT until after the CUOA sale. (*See* Meyer Aff. ¶ 5.i).  And apart from Meyer's

bare claim, the evidence does not even tend to show that Freddie Mac obtained the Loan itself on

February 7, 2005.  The screen shot adduced simply identifies that date as the "funding date."

That doesn't imply Freddie Mac was the beneficiary.  It is clear Freddie Mac was not the lender

(Charter was) and therefore did not fund the loan itself, so "funding date" has no connection to

Freddie Mac's purported acquisition of an interest in the Loan or DOT.  A field name such as

"acquisition date" as opposed to "funding date" would at least be some evidence Freddie Mac

held the Loan.  Freddie Mac guaranties many loans it does not hold, and this screen shot does not

tend to show that the Loan here is one Freddie Mac held rather than simply guarantied.  This

evidence is woefully inadequate to create a genuine issue of material fact as to the ownership of

the Loan, much less the DOT, as of the date of the CUOA sale.  The exhibits attached to the

Counterclaim itself do not include a copy of any instrument tending to show Freddie Mac had

any interest in the Loan or DOT until after the CUOA sale, and the allegation in the

Counterclaim that Freddie Mac "obtained an interest in the Property and 2005 Deed of Trust" in

2005, (*see* Countercl. ¶ 15, ECF No. 10), is contradicted by the surrounding allegations (and

attached evidence) indicating that other entities in fact held both the Loan and the DOT  from

inception through the CUOA sale, (*see id.* ¶¶ 17–19 & Exs. 3–5).

Plaintiff and the CUOA are entitled to summary judgment on the 12 U.S.C. § 4617(j)(3)

issue.  Defendants, however, also argue in their Answer and Counterclaim that the CUOA sale

was defective for other reasons such that the DOT was not extinguished thereby.  As successors-

1    in-interest to the DOT—there is no genuine dispute that Freddie Mac obtained the Loan (and

2    DOT, assuming it had not been extinguished) after the CUOA sale—they have standing to make

3    these arguments.  Specifically, Defendants argue  a lack of commercial reasonableness in the

4    CUOA sale, a violation of a statutory duty of good faith, satisfaction of the superpriority portion

5    of the CUOA lien prior to the CUOA sale, and due process violations via insufficient notice.

6    The Court will address those issues in turn.  Defendants have not moved for summary judgment

7    on these additional issues, but Plaintiff has.

8              **B.    Commercial Reasonableness of the CUOA Sale**

9              The Nevada Supreme Court recently ruled that an association's foreclosure sale may be

10   set aside under a court's equitable powers notwithstanding any recitals on the foreclosure deed

11   where there is a "grossly inadequate" sales price and "fraud, unfairness, or oppression." *Shadow*

12   *Wood Homeowners Assoc., Inc. v. N.Y. Cmty. Bancorp, Inc.*, 132 Nev. Adv. Op. 5, 2016 WL

13   347979, at *4–6 (Nev. 2016).  The Court remanded for further fact-finding but noted that the

14   general rule for gross inadequacy was 20% of fair market value, that the Court had in the past

15   approved sales for as low as 28.5%, and that the apparent 23% ratio in the case before it was not

16   "obviously" inadequate. *See id.* at *6 (citing *Golden v. Tomiyasu*, 387 P.2d 989, 993 (Nev.

17   1963); Restatement (Third) of Prop.: Mortgages § 8.3 cmt. b (1997)).  The Court also noted that

18   a foreclosing entity's (or its agent's) behavior with respect to a first mortgagee's attempts to

19   satisfy the superpriority portion of an association lien before foreclosure was relevant to the

20   second question on remand. *See id.* at *7.

21             The Counterclaim alleges that the fair market value of the Property at the time of the

22   CUOA sale exceeded $41,000 but the sales price was $9,100, i.e., slightly over 22% of the fair

23   market value. (*See* Countercl. ¶¶ 43–44).  The sales price does not appear to be disputed, but no

24

evidence of fair market value is adduced.  Plaintiff has therefore not satisfied his initial burden as to this issue, and the Court will not grant summary judgment.  The issue will have to be tried.

### C.      The Duty of Good Faith under NRS 116.1113

 "Every contract or duty governed by this chapter imposes an obligation of good faith in its performance or enforcement." Nev. Rev. Stat. § 116.1113.  The Court has seen claims before that a first mortgagee is an intended third-party beneficiary of a provision of CC&R contractually subordinating association liens to first mortgages.  The CC&R in this case are attached as Exhibit 6 to the Counterclaim, but Defendants do not identify which provision of the CC&R they believe the CUOA acted in bad faith with respect to, and the Court can find no such subordination claim therein.  The Court therefore grants summary judgment in favor of Plaintiff on this issue, which is essentially pled as an affirmative defense tied to the commercial unreasonableness issue.  Defendants have not identified any provision of the CC&R with respect to which they allege the CUOA acted in bad faith.

### D.      Satisfaction of the Superpriority Portion of the Lien

This issue is inextricably tied to the equitable issue identified above.  Plaintiff mainly argues that the recitals in the foreclosure deed are conclusive and therefore no argument of commercial unreasonableness based on inadequacy of price or refusals to accept the superpriority portion of the CUOA lien can succeed.  But the Nevada Supreme Court rejected those arguments in *Shadow Wood*, elucidating the standards to be applied on remand as to when an association sale may be equitably invalidated (or when a deed of trust that would have been extinguished in the absence of any iniquity could be validated as having survived).  The Court has found that those issues must be tried.[1]

---

1 The Court notes that Defendants have alleged only that the CUOA failed to identify the

E.      **Due Process**

As this Court has noted before, although the Court of Appeals has ruled that a private sale under the foreclosure statutes does not implicate due process absent state or local government involvement in the CUOA sale itself, due process standards apply where a party asks a court to affirm the validity of such a sale. *See US Bank, N.A. v. SFR Invs. Pool I, LLC*, --- F. Supp. 3d, ---, 2015 Wl 5023450, at *8–14 (D. Nev. 2015).  Accordingly, Plaintiff and Counterdefendant are entitled to defensive summary judgment against the Counterclaims in this regard, because Freddie Mac and Nationstar do not allege government involvement in the CUOA sale itself. *See id.* at *10.   But neither party is entitled to summary judgment as a matter of law on the due process issue as to Plaintiff's affirmative claims; those claims must be determined on the facts under the summary judgment standards. *See id.* at *11–14.  Plaintiff provides no evidence of having mailed or otherwise given notice to Defendants' predecessors-in-interest of the notice of sale that would satisfy due process requirements. *See id.*  He offers only a copy of the notice of sale itself.  His allegation in the Complaint that "[u]pon information and belief, copies of the [notice of sale] were sent to all parties with an interest in the Property and Deed of Trust via certified mail and/or first class mail," is unsupported by any evidence adduced. (*See* Compl. ¶ 22).  He has therefore not satisfied his initial burden on summary judgment as to the issue, and the issue must be tried.

///

///

///

///

---

superpriority amount during the foreclosure process, not that the CUOA rejected a tender of the amount by a predecessor-in-interest, which is a much stronger type of claim in this context.

**CONCLUSION**

IT IS HEREBY ORDERED that the Motions for Summary Judgment (ECF Nos. 38, 46, 53) are GRANTED IN PART AND DENIED IN PART. The CUOA sale of June 14, 2013 was not preempted by 12 U.S.C. § 4617(j)(3), and the CUOA did not act in bad faith under NRS 116.1113. The Court grants summary judgment to Plaintiff and Counterdefendant and denies it to Defendants on these points. The Court also grants summary judgment to Plaintiff and Counterdefendant and denies it to Defendants as to Defendants' counterclaim that Defendants' predecessor-in-interest did not receive constitutionally sufficient notice of the CUOA sale. As to Plaintiff's claim that Defendants' predecessor-in-interest received sufficient notice of the CUOA sale and as to whether the CUOA sale may be equitably avoided or the deed of trust equitably revived due to a grossly inadequate sales price and fraud, unfairness, or oppression, those issues must be tried.

IT IS FURTHER ORDERED that the Motion to Stay (ECF No. 48) is DENIED as moot.

IT IS SO ORDERED.

DATED: This 8th day of March, 2016.

_____
ROBERT C. JONES
United States District Judge